(38 South. 824.)

No. 15,496.

SPINKS v. GEORGIA QUINCY GRANITE CO.

(June 5, 1905.)

AGENCY—FIXED TERM—REVOCATION—RIGHT TO COMMISSIONS.

1. An agency for a fixed period, where it is stipulated that the agent shall receive commissions for his services, is in the nature of a contract of letting and hiring.

2. The revocation of such a mandate, if permissible, can have no legal effect between the parties until notified to the agent; and alleged want of due diligence, not complained of or acted upon during the period of employment, is no defense against his claim for commissions.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Fred. D. King, Judge.

Action by H. C. Spinks against the Georgia Quincy Granite Company. Judgment for defendant, and plaintiff appeals. Amended.

Buck, Walshe & Buck, for appellant. Saunders & Gurley, for appellee.

LAND, J. Plaintiff was in the year 1901 a paving contractor residing in the city of New Orleans, and on February 7, 1901, entered into a written contract with defendant corporation, domiciled in the state of Georgia, to be binding for a term of one year, or longer, unless terminated by either party at the expiration of the specified term.

By this contract plaintiff was made the sole representative of defendant in and for the city of New Orleans for the sale of granite and stone, rough and dressed, in consideration of defendant "representing for sale, handling and using no other such granite or stone in the city of New Orleans." In consideration of services rendered by defendant in making sales, also looking after shipments and protecting the interests of defendant, the latter agreed to allow plaintiff 5 per cent. commission on the gross amounts of all orders and contracts actually filled; this to apply to all completed orders for all material sold by plaintiff in the city of New Orleans for delivery there or elsewhere, or sold by defendant or representatives at said city or elsewhere for delivery at said city.

The agent thus constituted had no authority to make contracts for or bind defendant company, or "to in any way use" its name "without first obtaining" its written consent.

Plaintiff had a contract for paving Prytania street, and purchased from defendant above $3,000 worth of stone, which was used in this work. This contract was completed late in July, 1901. Plaintiff throughout the year bid unsuccessfully on other paving contracts requiring the use of stone, which he had bound himself to purchase from defendant. In October or November, 1901, the defendant sold one car load of stone to the Louisiana Improvement Company. No other sale of stone was made by either party. Plaintiff at best was a mere solicitor, and the only other prospective purchasers were rival paving contractors. This being the situation, plaintiff suggested in his letter of April 16, 1901, that defendant deal "with the Barber Company and the Louisiana Improvement Company direct." Defendant acquiesced in the suggestion. In the same letter plaintiff said:

"I have this day given the L. & N. orders for the balance of the granite. This was done to help the sale of your material to them, in their new depot. This charge makes a difference to me but I expect to benefit by it in the near future. I saw Manning of the Louisiana Improvement Company and he asked me what I was paying for the granite, and I told him $1.77 per square yard. While I was in the office, he received a letter from you quoting him the same price."

The stone purchased by plaintiff from defendant was ordered shipped over another railroad, but the order was changed to the Louisville & Nashville for the reasons stated in the above letter. Defendant corporation not only sold stone, but did paving work. So, as early as April, 1901, it was advised by plaintiff that the Louisville & Nashville would need stone for paving work. Defendant did sell one car load of stone later in the year to the improvement company, and in December, 1901, made a successful bid for the Louisville & Nashville work, after having been advised that plaintiff would not bid on the same.

Plaintiff's suit by attachment cumulated three demands: First. For commission on selling price of granite blocks used in the Louisville & Nashville paving work.

Second. For loss of profit on alleged subcontract for asphalt work on the same job.

Third. For the rental price of certain wheelbarrows and roller used by defendant in the prosecution of the Louisville & Nashville work.

1. The commission was due prima facie under the terms of the contract. The defense is that the contract was terminated by the failure and neglect of plaintiff to look after the interests of defendant, to obtain business for it, and by his refusal to bid on work.

There was no friction or complaint until after the Louisville & Nashville contract was let to defendant about December 20, 1901. As the contract between the parties did not bind plaintiff to bid on this or any other paving work, his alleged refusal to bid is entitled to no consideration whatever. Defendant was advised by plaintiff's manager that

the work would be let on a certain day, and that plaintiff would not bid on the same.

Defendant's president wired plaintiff's manager to have a set of specifications ready, and came to New Orleans prepared to put in a bid for the entire work. This officer went to plaintiff's offices, and with his assistance and that of his employés prepared and made a bid for the work to be let by the railroad company, and the bid was accompanied by plaintiff's certified check for $100, which, at his request, was returned to him a few days thereafter. Plaintiff expected to get the subcontract for the asphalt work, and testified that such was the agreement. This work, however, was sublet only as to asphalt finish, the concrete work being reserved for the contractor. Reading between the lines, this misunderstanding caused the breach between the parties, and led to the demand by plaintiff for the return of the certified check, and the demand by defendant for the payment of the balance due by plaintiff on account of the purchase price of stone furnished for the Prytania street work.

When on the witness stand, Mr. Artope, the president of defendant company, was asked when the contract terminated. He could not tell, and admitted that neither party had notified the other that the contract was at an end. We make the following excerpts from the testimony of this witness:

"A. Well, the main issue is that we considered that terminated when he refused to bid on the Louisville & Nashville work, or to in any way aid in getting that work.

"A. I considered the contract terminated when Mr. Flynn wired us that Mr. Spinks would not bid. * * *

"Q. You never said anything to Mr. Spinks that suggested to him the abrogation of the contract?

"A. No, sir; I never. I suppose he read the contract. He knew what was in it."

In the first place, plaintiff was not bound under his contract to bid for that or any other work. In the second place, defendant company could not complain that this valuable contract for $30,000 was awarded to itself, rather than to its agent individually. If the agent was remiss as to this particular work, his principal was the gainer thereby. The main excuse urged is so flimsy that it is useless to notice other charges of negligence, which, if they ever had any merit, were condoned, and passed over in silence.

No revocation of the mandate was notified to the agent. The contract was not a gratuitous mandate, but one in the nature of a letting and hiring; and plaintiff could not have been lawfully discharged without serious grounds of complaint. If he was negligent, he should have been discharged on that ground.

We are of the opinion that plaintiff should recover $617.50 commissions on selling price of stone used in the work.

2. We do not think that the alleged subcontract for asphalt work is sustained by a preponderance of the evidence. The making of such contract is supported only by the uncorroborated testimony of the plaintiff, and is denied by the positive testimony of defendant's manager and president. The testimony of Flynn, called by plaintiff as a witness to the verbal agreement, is a negation of its existence as far as the knowledge of the witness goes.

3. That plaintiff's barrows and roller were used by defendant to some extent, and that something is due for such use, is conceded; but plaintiff claims rental contract prices, and repudiates any claim on a quantum meruit. Plaintiff's contention is that he notified the superintendent of defendant company that, if he continued the use of the barrows and roller, plaintiff would charge a certain price per day; that is, 25 cents for each barrow, and $3 for the roller. Plaintiff and another witness testified that statements were from time to time rendered to defendant's manager. We find in the record a statement dated May 29, 1902; another dated June 20, 1902; and another dated July

3, 1902. Plaintiff testified that the first statement was presented on March 29th. But this was evidently a mistake of the witness or of the stenographer, because the witness refers to the statement as charging rent to May 29, 1902. Plaintiff further testified that on March 1, 1902, he told defendant's manager, Flynn, what rent would be charged if defendant kept the barrows and roller.

Hence there could not have been any contract price prior to March 1st. Flynn, the manager of the defendant, was called as a witness for plaintiff. Mr. Flynn testified that in the interview referred to by plaintiff nothing was said about the rental to be paid for the wheelbarrows, and that the first he knew of the matter was when a bill was presented by Mr. Soniat Dufossat, the bookkeeper of plaintiff. Flynn testified that the roller was used only three days, and about twelve barrows from twenty to thirty days; but the witness is not positive as to the latter.

Mr. Dufossat testified that the first bill, of date May 29th, was delivered to Mr. Artope or to Mr. Flynn; he thinks to the latter. Hence plaintiff's testimony that on March 1, 1902, he told Flynn what rental would be charged is contradicted by Flynn, and therefore no notice to defendant of such rental can be fixed at an earlier date than May 29, 1902.

We do not consider that the evidence shows any contract, express or implied, to pay a fixed rental. Hence such claim must be disallowed, with a proper reservation.

It is therefore ordered that the judgment appealed from be amended so as to decree that plaintiff do have and recover of the defendant the sum of $617.50, with legal interest thereon from judicial demand until paid, and all costs of suit, and that plaintiff's writ of attachment be maintained, and his privilege as attaching creditor be recognized and enforced according to law on all the property, rights, and credits attached in this suit, and especially on any and all indebtedness due to defendant by the Louisville & Nashville Railroad Company on June 3, 1902; and that, as thus amended, said judgment be affirmed, reserving plaintiff's right to sue on a quantum meruit for rental value; appellee to pay costs of appeal.